IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ONE BUCKHEAD LOOP
CONDOMINIUM ASSOCIATION,
INC.,

    Plaintiff,

      v.

STEPHEN E. PEW
as Trustee for The Gladys Duffy Pew
GST Exempt Trust,

    Defendant.

CIVIL ACTION FILE
NO. 1:10-CV-796-TWT

ORDER

    This is a judicial foreclosure action.  It is before the Court on the Plaintiff's Motion for Summary Judgment on the Defendant's Counterclaims [Doc. 56], the Plaintiff's Motion for Summary Judgment on the Plaintiff's Claims [Doc. 60], and the Defendant's Motion for Summary Judgment [Doc. 62].  For the reasons set forth below, the Court GRANTS the Plaintiff's Motion for Summary Judgment on the Defendant's Counterclaims [Doc. 56], GRANTS IN PART and DENIES IN PART the Plaintiff's Motion for Summary Judgment on the Plaintiff's Claims [Doc. 60], and GRANTS IN PART and DENIES IN PART the Defendant's Motion for Summary Judgment [Doc. 62].

## I. <u>Background</u>

The Defendant, Stephen Pew, owns a condominium unit located at 3334 Peachtree Road, Atlanta, GA 30326 in the One Buckhead Loop development (the "Development").  The Plaintiff, One Buckhead Loop Condominium Association (the "Association") operates the Development and is responsible for common areas.  The Development, including the Defendant's unit, is governed by the Declaration of Condominium for One Buckhead Loop Condominium (the "Declaration").  (<u>See</u> Compl., Ex. A.)  Section 9(b)(ii) of the Declaration provides that "[a]ny common expenses occasioned by the conduct of less than all of those entitled to occupy all of the Units or by the Occupant(s), licensees or invitees of any such Unit or Units may be specifically assessed against such Unit or Units."  (Compl., Ex. A.)  Further, section 11(b) of the Declaration states that "[e]ach Owner of any Unit . . . is deemed to covenant and agree to pay to the Association: (i) annual assessments or charges; (ii) special assessments, . . . and (iii) specific assessments."  (<u>Id.</u>)  Finally, the Declaration provides that "[a]ll such assessments, together with charges, interest, costs and reasonable attorney's fees actually incurred . . . shall be a charge on the Unit and shall be a continuing lien upon the Unit against which each assessment is made."  (<u>Id.</u>)

Until January 4, 2008, Nye Lavalle, Pew's nephew, occupied the Defendant's condominium.  In 2008, the Association instituted several actions in Fulton County

Superior Court seeking protective orders against Lavalle (the "Stalking Orders").  <u>See</u> <u>Grenuk v. Lavalle</u>, No. 2007CV14420; <u>Jarrett v. Lavalle</u>, No. 2007CV144219; [Doc. 60, Ex. E].  These actions arose from Lavalle's harassment of Edward Jarrett, the Association's Property Manager, and Joe Grenuk, an Association Board Member.

On June 26, 2008, the Association instituted an action against Pew seeking unpaid condominium assessments (the "2008 Action").  (<u>See</u> Jarrett Aff., Ex. F.) Specifically, the Association sought unpaid utility assessments up to February 2009, general assessments through December 2009, specific assessments for attorney's fees incurred in obtaining and enforcing the Stalking Orders through January 5, 2009, and attorney's fees for collection of past due assessments.  On June 22, 2009, the Fulton County Superior Court granted summary judgment in favor of the Association.  (<u>See</u> Jarrett Aff., Ex. F.)  The Georgia Court of Appeals upheld the trial court's ruling.

Since the 2008 Action, the Association has continued to assess fees to the Defendant's unit.  Specifically, the Association has levied fees for monthly assessments, utilities, fines, specific assessments, interest, and attorney's fees related to enforcing the Stalking Orders.  The Defendant admits that he has not paid these amounts.  (Pew Dep. at 17.)

While the 2008 Action was pending, the Association entered into a contract (the "Engagement Letter") with a law firm, Levenson and Associates, to provide legal

services [See Doc. 66-9].  The Engagement letter provided that any legal bills accrued after January 1, 2009 would not be due "until the sale of unit #207 or at such other time as funds become available by OBL through payment of the liens and charges due against the unit (in the event the unit does not sell but the amounts due on the unit are paid in whole or in part)."  Id.

On November 10, 2009, the Association filed a Notice of Statutory Lien against the Defendant's condominium unit, alleging unpaid assessments, late fees, interest, and attorney's fees [Doc. 66-6].  On February 2, 2010, the Plaintiff filed this action in Fulton County Superior Court [See Doc. 1].  The Association's original Complaint sought judicial foreclosure of a lien as well as monthly assessments, utility charges, fines, specific assessments, interest, and attorney's fees.  Id.  The Defendant then removed the action to this Court.  The Plaintiff has filed a Motion for Summary Judgment on the Defendant's Counterclaims [Doc. 56] and a Motion for Summary Judgment on the Plaintiff's Claims [Doc. 60].  The Defendant has also filed a Motion for Summary Judgment [Doc. 62].  After these motions were filed, the Defendant moved to amend its Complaint [Doc. 58].  On March 25, 2011, the Court granted the Plaintiff's Motion to Amend [Doc. 72].  The Plaintiff's Second Amended Complaint withdraws the claim for attorney's fees incurred attempting to recover the judgment from the 2008 Action [See Doc. 73].  Thus, the Second Amended Complaint only

-4-

seeks amounts assessed under the Declaration, including attorney's fees incurred in enforcing the Stalking Orders [See Doc. 73].

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  Discussion

### A.    The Defendant's Counterclaims

The Plaintiff has moved for summary judgment on the Defendant's counterclaims [See Doc. 56].

#### 1.    Breach of Contract

The Defendant claims that the Association breached the Declaration. (Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 14.) Specifically, the Defendant argues that the Plaintiff levied improper assessments, collected usurious interest, recorded a false lien, assessed fines without proper notice and failed to provide an accurate accounting. (Id.) The Plaintiff contends that this claim is *res judicata* because it could have been raised in the 2008 Action. O.C.G.A. § 9-12-40 provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in" the prior action. O.C.G.A. § 9-12-40. Here, although the Defendant's counterclaim is not clear, it appears that the Defendant seeks damages for conduct that occurred *after* the 2008 Action was decided. Thus, the Plaintiff's breach of contract claim is not barred by res judicata.[1]

To prevail on a claim for breach of contract, however, Pew must show (1) that the Association breached the contract and (2) that damages resulted. See Importers Service Corp. v. GP Chemicals Equity, LLC, 652 F. Supp. 2d 1292, 1300 (N.D. Ga. 2009). Here, the Defendant admits he has not paid any of the charges he says were wrongfully assessed to his condominium. Thus, Pew has not suffered any damages.

---

[1]To the extent that any of the Defendant's counterclaims are based on assessments that were the subject of the 2008 Action, those claims are dismissed as *res judicata*.

Rather, Pew's claim simply tracks his argument that the Association is not entitled to the assessments it has levied. For this reason, there is no issue of material fact as to the Defendant's breach of contract claim. To the extent Pew seeks restitution damages for breach of contract [Doc. 13, ¶¶ 9-12], those claims are also dismissed.

### 2. Negligent Misrepresentation

The Plaintiff has moved for summary judgment on the Defendant's counterclaim for negligent misrepresentation. The Defendant's counterclaim alleges that the Plaintiff and its lawyers misrepresented the amounts Pew owed to the Association. (Def.'s Answer ¶ 27.) A party is liable for negligent misrepresentation if he "supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Robert & Co. Assocs. v. Rhodes-Haverty P'ship, 250 Ga. 680, 681 n.1 (1983) (quoting RESTATEMENT (SECOND) OF TORTS § 552 (1977)).

First, although Pew disputes the exact amount he owes to the Association, he has produced no evidence showing that the Association *negligently* misrepresented his debt. Further, Pew has not paid the charges levied by the Plaintiff. Thus, the Defendant has not justifiably relied on the Plaintiff's representations. Indeed, Pew

vehemently contests the validity of those representations.[2]  For these reasons, there is no issue of material fact as to the Defendant's negligent misrepresentation claim.

### 3.    Uniform Deceptive Trade Practices Act

The Defendant claims that the Association violated the Georgia Uniform Deceptive Trade Practices Act ("UDTPA").  Specifically, the Defendant argues that the Association violated O.C.G.A. § 10-1-372(a)(12), which provides that "[a] person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . . [e]ngages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  O.C.G.A. § 10-1-372(a)(12).[3]  The Defendant alleges that the Association made "false, misleading, oral and written statements of accounts which had the effect of deceiving and misleading the Trust into demands for payments it is not obligated to."  [Doc. 13, ¶ 31].  Here, however, the Plaintiff's conduct did not create confusion or misunderstanding.  Although the Defendant disputes the accounting given by the Association, that dispute is the subject of the Plaintiff's claims.  Pew has produced no evidence showing that the Plaintiff's conduct

---

[2]Again, to the extent the Defendant seeks damages for amounts paid as a result of the judgment in the 2008 Action, the state trial court and Georgia Court of Appeals have already determined those amounts to be valid.  (See Jarrett Aff., Ex. F.)

[3]The UDTPA generally prohibits misrepresenting the source or characteristics of goods and services.

confused or deceived him into paying any amount to the Association. For this reason, the Plaintiff's UDTPA claim is dismissed.

        4.    <u>Fair Business Practices Act</u>

The Defendant claims that the Association violated Georgia's Fair Business Practices Act. O.C.G.A. § 10-1-393(a) provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." Like the Defendant's UDTPA claim, Pew has presented no evidence that the Association has deceived anyone. The Plaintiff has brought suit for unpaid assessments. The Defendant disputes the amount of money he owes to the Association. Pew has presented no evidence that the Plaintiff has deceived him or that he has suffered any damages as a result. For these reasons, the Defendant's Fair Business Practices Act claim is dismissed.

        5.    <u>Fraud</u>

The Plaintiff has moved for summary judgment as to the Defendant's fraud claim. "The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." <u>Crawford v. Williams</u>, 258 Ga. 806 (1989). Here, as discussed above, Pew has not paid the amounts assessed by the Association. (Pew Dep. at 255.) Thus, he has not relied on the Plaintiff's

representations or suffered damages as a result.  For this reason, there is no issue of material fact as to the Defendant's fraud claim.

6.    Unjust Enrichment

The Plaintiff has moved for summary judgment as to the Defendant's counterclaim for unjust enrichment.  In Georgia, "an obligation to pay arises upon the theory of unjust enrichment where a benefit has been conferred upon the party sought to be held liable for the value." Yoh v. Daniel, 230 Ga. App. 640, 642 (1998).  Here, as discussed above, Pew has not conferred any benefit upon the Association because he has refused to pay the charges levied against him.  (Pew Dep. at 255.)  For this reason, the Defendant's counterclaim for unjust enrichment is dismissed.

7.    Vexatious Litigation

The Defendant has brought a counterclaim for vexatious litigation. "Any party who shall assert a claim, defense, or other position with respect to which there exists such a complete absence of any justiciable issue of law or fact that it reasonably could not be believed that a court would accept the asserted claim, defense, or other position; or any party who shall bring or defend an action, or any part thereof, that lacks substantial justification, or is interposed for delay or harassment . . . shall be liable in tort to an opposing party who suffers damage thereby." Yost v. Torok, 256 Ga. 92, 96 (1986).  Here, however, Pew admits that he owes the Association at least

some of the assessments charged to his condominium.  (Pew Dep. at 16.)  Although the Defendant disputes the amount that he owes to the Association, especially the amount of any attorney's fees, Pew has not produced any evidence showing that the Plaintiff's claims were brought to delay or harass or are completely without legal or factual justification.  Indeed, as discussed below, several of the Plaintiff's claims have merit.  For this reason, Pew's claim for vexatious litigation is dismissed.

8.   Slander of Title

The Defendant claims that the Association slandered his title by filing the Notice of Statutory Lien on November 10, 2009 [See Doc. 66-6].  "The owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom."  O.C.G.A. § 51-9-11.  O.C.G.A. § 44-3-109 authorizes liens against condominium units for unpaid assessments.  Here, Pew admits that he has not paid the amounts assessed by the Association.  Although Pew disputes the amount of those assessments, he admits that he owes certain amounts to the Association.  Further, Pew has not presented any evidence showing that the statements in the Notice of Statutory Lien are false.  See Roofing Supply of Atlanta, Inc. v. Forrest Homes, Inc., 279 Ga. App. 504, 508 (2006) (noting that party bringing claim for slander of title has burden to show false statements in lien notice).  Although Pew disputes that he owes the full amount listed

on the Notice of Lien, specifically attorney's fees, he has not produced any evidence showing that the assessments are *false*. For this reason, the Defendant's slander of title claim is dismissed.

9.     Attorney's Fees

The Defendant seeks attorney's fees, contending that the Plaintiff engaged in vexatious litigation [See Doc. 13]. As discussed above, however, the Plaintiff has not engaged in vexatious litigation. Further, to the extent that the Plaintiff seeks attorney's fees under O.C.G.A. § 13-6-11, the Defendant failed to specifically plead for such an award in its counterclaim. See Department of Transp. v. Georgia Television Co., 244 Ga. App. 750, 751 (2000) (noting that where party seeks attorney's fees for bad faith, award must be specifically pled in the complaint). For these reasons, the Defendant's counterclaim for attorney's fees is dismissed.

B.     The Plaintiff's Claims

1.     Common Area, Utility Charges, and Fines

The Plaintiff has assessed the Defendant's condominium unit for common area charges, utility fees, and fines. First, the Plaintiff has assessed $12,336.00 in general assessments. (Jarrett Aff. ¶ 10.) Section 9(a) of the Declaration provides that each condominium unit is responsible for common area expenses in accordance with that unit's ownership of the common elements. (See Compl., Ex. A.) The Defendant's

common area charge was $514.00 per month.  (<u>See</u> Pl.'s Mot. for Summ. J. on Pl.'s Claims, Ex. C; Doc. 60-6.)

In addition to the common area charge, the Association also assessed $719.60 in late fees. (Jarrett Aff. ¶ 10.) O.C.G.A. § 44-3-109(b)(1) provides that the Association may charge "[a] late or delinquency charge not in excess of the greater of $10.00 or 10 percent of the amount of each assessment or installment thereof not paid when due." O.C.G.A. § 44-3-109(b)(1).  Further, section 11(c) of the Declaration provides that "[i]f any monthly installment of annual assessments or any part thereof is not paid in full by the tenth (10th) day of the month . . . a late charge equal to the greater of ten ($10.00) dollars or ten (10%) percent of the amount not paid . . . may be imposed."  (Compl., Ex. A.)  Here, the Association charged the Defendant $5.14 per month in late fees–or 10% of each common area charge that went unpaid.   (<u>See</u> Pl.'s Mot. for Summ. J. on Pl.'s Claims, Ex. C; Doc. 60-6.)

Second, the Plaintiff has levied assessments for utility bills in the amount of $3,022.28.  (Jarrett Aff. ¶ 10.)  Pursuant to section 9(b)(ii) of the Declaration, the Association may assess any common expense "occasioned by the conduct of less than all" the units.  (Compl., Ex. A.)  The Defendant has failed to pay past due utility charges to the Association.  (<u>See</u> Pl.'s Mot. for Summ. J. on Pl.'s Claims, Ex. C; Doc. 60-6.)

Third, the Plaintiff has imposed fines based on the Defendant's failure to provide proof of insurance.  These fines total $15,455.00.  (Jarrett Aff. ¶ 10.)  Section 11(b) of the Declaration provides that "[e]ach Owner of any Unit . . .  is deemed to covenant and agree to pay to the Association: (iii) specific assessments against any particular Unit which are established pursuant to the terms of this Declaration, including but not limited to reasonable fines."  (Compl., Ex. A.)  Further, section 12(h) of the Declaration provides that "[e]very Unit Owner shall be obligated to obtain and maintain at all times insurance covering those portions of his or her Unit to the extent not insured by policies maintained by the Association."  (Id.)  The Defendant has failed to provide proof of insurance.  (Jarrett Aff. ¶ 12.)  The Association assessed the Defendant $30 per day for this violation, beginning on September 14, 2009.  (Id. ¶ 12.)  Pew does not dispute that he owes common area assessments and utility charges.   Indeed, the Defendant does not explain why he failed to pay these assessments.  (Pew Dep. at 17 & 255.)  Also, the Defendant does not contend that he provided proof of insurance or that the fines levied against him are unreasonable.  For these reasons, there is no issue of material fact as to the assessments for common area expenses, utility charges, and fines.

      2.    <u>Attorney's Fees</u>

The Plaintiff also seeks attorney's fees incurred to enforce the Stalking Orders from January 2009 through August 2010.  (Jarrett Aff. ¶ 11.)   According to the Plaintiff, these fees total $34,220.75.  (Levenson Aff. ¶ 6.) The Association has levied these fees as specific assessments against Pew's condominium.[4]  Section 9(b)(ii) of the Declaration provides that charges for any "Common Expenses occasioned by the conduct of less than all of those entitled to occupy all of the Units or by the Occupant(s), licensees or invitees of any such Unit or Units may be specially assessed against such Unit or Units."  (Compl., Ex. A.)   Lavalle, the Defendant's nephew, occupied the Defendant's unit until January 4, 2008.   While occupying the unit, Lavalle harassed the Association Property Manager, Edward Jarrett, and an Association Board Member, Joe Grenuk.   The Association incurred legal fees attempting to protect Jarrett and Grenuk, culminating in the January 4, 2008 Stalking Orders issued by the Fulton County Superior Court [See Doc. 60-8].  The Association contends, however, that from January 2009 through December 2010, Lavalle violated the Stalking Orders, continuing to harass Jarrett and Grenuk.  (Jarrett Aff. ¶ 11.)  The Association thus incurred further legal expense to obtain a contempt judgment against Lavalle.  (Jarrett Aff. ¶ 11.)

---

[4]The Plaintiff has withdrawn its claim for attorney's fees to recover money awarded in the 2008 Action.

First, the Defendant argues that the Engagement Letter is a contingency fee agreement.  Thus, Pew contends, the Association may not recover attorney's fees charged pursuant to the Engagement Letter because those fees are not due.  See Ellerin & Assocs. v. Brawley, 263 Ga. App. 860, 861 (2003) (noting that there is no obligation to pay contingent fee until condition precedent occurs). The Plaintiff, however, asserts in its brief that the Engagement Letter is not a contingency fee agreement, but rather a "deferred compensation agreement."  (Pl.'s Reply Br. in Support of Pl.'s Mot. for Summ. J. on Pl.'s Claims, at 5.)  The Engagement Letter provides that any legal bills accrued after January 1, 2009 would not be due "until the sale of unit #207 or at such other time as funds become available by OBL through payment of the liens and charges due against the unit (in the event the unit does not sell but the amounts due on the unit are paid in whole or in part)"  [Doc. 66-9]. Despite its assertion to the contrary, the Plaintiff's Property Manager, Edward Jarrett, testified that "[t]he agreement I have with Mr. Levenson is contingent."  (Jarrett Dep. at 148.) Jarrett also testified that Levenson and Associates would not be paid until the case settles or the condominium is foreclosed upon. (Id. at 162-63.)  Indeed, the plain language of the agreement indicates that Levenson and Associates will *not be paid* unless and until one of the contingencies listed in the contract occurs.  Thus, the Engagement Letter represents a contingent fee agreement.

Here, however, a condition precedent listed in the Engagement Letter has occurred. Specifically, on December 6, 2010, the Defendant paid $34,262.62 to the Association, who was the holder of a tax lien on the condominium unit.[5] (Jarrett Resp. Aff. ¶ 11; Doc. 69-2.) Although the Plaintiff has not recovered in this lawsuit, "amounts due on the unit [have been] paid in whole or in part." [Doc. 66-9]. For this reason, the attorney's fees accumulated under the Engagement Letter are due and payable.

Next, the Defendant alleges that the attorney's fees sought are not reasonable. Although Pew baldly asserts that Levenson and Associates' fees are excessive, he provides no evidence to show that the firm performed unnecessary work or that the rates charged were unreasonable. Indeed, the Plaintiff provided billing records indicating that Levenson and Associates charged between $200 and $375 per hour. (See Levenson Aff. ¶ 11.) Louis Levenson further testified that these rates were reasonable, customarily charged in the Atlanta area, and that all fees were necessarily incurred. (Id.)

Finally, the Defendant argues that the attorney's fees are unauthorized because Nye Lavalle was not an occupant of the condominium unit at the time the fees were

---

[5]The Defendant also paid $120,000 into the registry of the Fulton County Court after judgment in the 2008 Action. That amount, however, has not been *paid* to the Association. Indeed, the Defendant placed the money in the registry to obtain a stay of execution. (Jarrett Resp. Aff. ¶ 10.)

charged.  Lavalle moved out of the unit on January 4, 2008.  The Association seeks attorney's fees from January 2009 through August 2010.  The Association argues, however, that these fees resulted from Lavalle's conduct while he was still an occupant of the Defendant's unit.  (Reply Br. in Supp. of Pl.'s Mot. for Summ. J. on Pl.'s Claims, at 12.)   The Plaintiff notes that the Stalking Orders resulted from Lavalle's conduct while he was living in the Development.   The Association, however, is not seeking attorney's fees incurred to obtain the Stalking Orders.  Indeed, the Plaintiff did not hire Levenson and Associates until March 2009, *after* the Stalking Orders had been entered [See Doc. 66-9].  Rather, the Association seeks attorney's fees "to continue its prosecution and enforcement of [the Stalking Orders]."  (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J. on Pl.'s Claims, at 8.)  Further, the Association seeks to recover fees for a period beginning one year *after* Lavalle vacated the unit. The Association claims that these fees were incurred because Lavalle appealed and violated the Stalking Orders.  (See id., at 9 n.3.)  The Stalking Orders were entered the day Lavalle moved out of the Development [See Doc. 66-9].  Thus, any conduct that violated the Stalking Orders occurred after Lavalle vacated the Defendant's condominium unit.

The Association stresses, however, that the Declaration and O.C.G.A. § 44-3-80(b)(2) define "occupant" broadly.  The Declaration defines "occupant" as "any

Person occupying all or any portion of a Unit for any period of time." (Compl., Ex. A.) The Plaintiff contends this language allows it to charge special assessments to a condominium unit for the conduct of *any* past occupant. The Association's reading is too broad. Rather, the definition merely clarifies that there is no minimum period of residency required to be considered an occupant. The Plaintiff's reading would allow the Association to charge assessments resulting from the conduct of any occupant who had ever lived in a certain unit. Thus, when Lavalle violated the Stalking Orders after leaving the unit, he was no longer an occupant for the purposes of the Declaration and O.C.G.A. § 44-3-80(b)(2). The Association may not, therefore, levy assessments against the Defendant's condominium under the Declaration. For this reason, the Plaintiff is not entitled to recover any assessments for attorney's fees.

        3.    <u>Statutory Lien</u>

The Plaintiff seeks to foreclose on a statutory lien against the Defendant's condominium. O.C.G.A. § 44-3-109(a) provides that "[a]ll sums lawfully assessed by the association against any unit owner or condominium unit, whether for the share of the common expenses pertaining to that condominium unit, for fines, or otherwise . . . shall, from the time the same become due and payable, be the personal obligation of the unit owner and constitute a lien in favor of the association on the condominium unit." O.C.G.A. § 44-3-109(a). On November 10, 2009, the Association filed a

Notice of Statutory Lien against the Defendant's unit in the amount of $57,634.52 [Doc. 66-6].  This lien includes "unpaid assessments, late fees, interest, the cost of collection and reasonable *attorney's fees* actually incurred."  Id.  (emphasis added). As discussed above, however, the Plaintiff was not entitled to assess attorney's fees incurred in enforcing the Stalking Orders.  Thus, any amounts assessed for attorney's fees were not "lawfully assessed" and cannot form the basis of a statutory lien under O.C.G.A. § 44-3-109.  For this reason, the Plaintiff's motion with respect to the statutory lien is denied.

     C.     The Defendant's Motion for Summary Judgment

As discussed above, the Plaintiff is entitled to recover assessments for common area expenses, utility charges, and fines.  The Defendant may not, however, recover attorney's fees assessed against the Defendant's unit because these fees did not result from Lavalle's conduct while he was an occupant.  Similarly, as discussed above, the Defendant may not foreclose on the statutory lien.  For these reasons, the Defendant's motion is granted with respect to assessments for attorney's fees and the statutory lien.

## IV.  Conclusion

For the reasons set forth above, the Court GRANTS the Plaintiff's Motion for Summary Judgment on the Defendant's Counterclaims [Doc. 56], GRANTS IN PART

and DENIES IN PART the Plaintiff's Motion for Summary Judgment on the

Plaintiff's Claims [Doc. 60], and GRANTS IN PART and DENIES IN PART the

Defendant's Motion for Summary Judgment [Doc. 62].

SO ORDERED, this 9 day of May, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge